

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | CIVIL NO. MJG-17-3649 |
| ) | |
| SUSAN K. PATRICK, MANAGING ) | |
| MEMBER, PATRICK COMMUNICATIONS, ) | |
| LLC, ) | |
| ) | |
| Respondent. ) | |

**RESPONSE TO**
**INTERNAL REVENUE SERVICE SUMMONS**

I, Susan K. Patrick, Managing Member of Patrick Communications, LLC, submit the following response to the Internal Revenue Service Summons:

Provide the Following:

1) All documents that discuss, describe, effectuate or otherwise relate to the Stock Sale, including, but not limited to, documents of meetings, negotiations, valuations, brokerage agreements, commissions, engagement letters, side letters, communications, agreements, promissory notes, due diligence, marketing materials, computations, and/or legal opinions.

I have reviewed all of our company files, both paper and electronic, and Patrick Communications has no documents that discuss, describe, effectuate or otherwise relate to the Stock Sale (as defined in Attachment 1 of the IRS Summons dated January 31, 2017. This includes, but is not limited to, any documents of meetings, negotiations, valuations, brokerage agreements, commissions, engagement letters, side letters, communications, agreements, promissory notes, due diligence, marketing materials, computations, and/or legal opinions.

As a general practice, Patrick Communications does not keep paper or electronic files on potential or consummated client transactions for very long after the transaction is either consummated or is no longer a potential transaction. Information for a specific transaction loses its relevance shortly after a transaction is consummated and Patrick Communications does not keep the information nor is it required to do so by law. As noted above, I have reviewed all files currently in the possession of Patrick Communications and we have nothing related to this transaction. Most likely, given the date of this transaction, the files relating to it would have been discarded by 2002. In addition, Patrick Communications moved locations in 2007 and discarded many additional files at that time that were prior to that date and no longer relevant. Our current email system has no emails older than 2005 unless they were specifically archived. There are none relating to this transaction. Our current electronic calendar that tracks meetings, travel by the principals, conference calls, etc. starts in January of 2010 and an older version began in January of 2004. Our current accounting system goes back to 1998, but there are no entries related to "CTN Group" (which this Summons refers to collectively as Continental Television Network, Inc., CTN Missoula Inc., and CTN Butte, Inc.).

The order that we are responding to asks for what type of Information might have been on hand related to this request. It would likely have included an engagement agreement with the seller, a marketing presentation outlining the market and station operations, and due diligence materials that were provided by the seller and were passed through to a buyer by Patrick Communications. These due diligence items provided to Patrick Communications by the seller might have included an asset inventory, financial information, financial statements and/or seller tax returns, copies of contracts and leases to be assumed, a list of real property to be conveyed, a personnel list, copies of employee handbooks and policies, copies of insurance coverage, and other items used and useful in a station operation. We would have had email communications with the seller and potential buyers, and potentially notes on the transaction. We may have had drafts of purchase agreements and schedules, but not necessarily. Patrick Communications as a matter of practice does not act as an agent of a seller or buyer, does not draft or review legal documents relating to a transaction, does not offer legal, FCC or tax advice, and always recommends that the parties to a transaction hire outside counsel for all matters relating to the transaction. Patrick Communications, as broker, primarily acts as an intermediary for passing along information that originates with the seller and assists in negotiating primary business points with the parties in a transaction.

2) All documents that discuss, describe, effectuate or otherwise relate to the Asset Sale, including, but not limited to, documents of meetings, negotiations, valuations, brokerage agreements, commissions, engagement letters, side letters, communica-

tions, agreements, promissory notes, due diligence, marketing materials, computations, and/or legal opinions.

I have reviewed all of our company files, both paper and electronic, and Patrick Communications has no documents that discuss, describe, effectuate or otherwise relate to the Asset Sale (as defined in Attachment 1 of the IRS Summons dated January 31, 2017. This includes, but is not limited to, any documents of meetings, negotiations, valuations, brokerage agreements, commissions, engagement letters, side letters, communications, agreements, promissory notes, due diligence, marketing materials, computations, and/or legal opinions.

As a general practice, Patrick Communications does not keep paper or electronic files on potential or consummated client transactions for very long after the transaction is either consummated or is no longer a potential transaction. Information for a specific transaction loses its relevance shortly after a transaction is consummated and Patrick Communications does not keep the information nor is it required to do so by law. As noted above, I have reviewed all files currently in the possession of Patrick Communications and we have nothing related to this transaction. Most likely, given the date of this transaction, the files relating to it would have been discarded by 2002. In addition, Patrick Communications moved locations in 2007 and discarded many additional files at that time that were prior to that date and no longer relevant. Our current email system has no emails older than 2005 unless they were specifically archived. There are none relating to this transaction. Our current electronic calendar that tracks meetings, travel by the principals, conference calls, etc. starts in January of 2010 and an older version began in January of 2004. Our current accounting system goes back to 1998, but there are no entries related to "CTN Group" (which this Summons refers to collectively as Continental Television Network, Inc., CTN Missoula Inc., and CTN Butte, Inc.).

The order that we are responding to asks for what type of Information might have been on hand related to this request. It would likely have included an engagement agreement with the seller, a marketing presentation outlining the market and station operations, and due diligence materials that were provided by the seller and were passed through to a buyer by Patrick Communications. These due diligence items provided to Patrick Communications by the seller might have included an asset inventory, financial information, financial statements and/or seller tax returns, copies of contracts and leases to be assumed, a list of real property to be conveyed, a personnel list, copies of employee handbooks and policies, copies of insurance coverage, and other items used and useful in a station operation. We would have had email communications with the seller and potential buyers, and potentially notes on the transaction. We may have had drafts of purchase agreements and schedules, but not necessarily. Patrick Communications as a matter of practice does not act as an agent of

a seller or buyer, does not draft or review legal documents relating to a transaction, does not offer legal, FCC or tax advice, and always recommends that the parties to a transaction hire outside counsel for all matters relating to the transaction. Patrick Communications, as broker, primarily acts as an intermediary for passing along information that originates with the seller and assists in negotiating primary business points with the parties in a transaction.

3) All documents that discuss, describe, or otherwise relate to efforts to sell the Continental Television Network, Inc. Stock during 1998 through 2001, including, but not limited to brokerage agreements, commissions, correspondence, offering memoranda, confidentiality agreements, marketing materials, computations, tax strategies, and sales strategies.

I have reviewed all of our company files, both paper and electronic, and Patrick Communications has no documents that discuss, describe, effectuate or otherwise relate to efforts to sell the Continental Television Network, Inc. stock during 1998 through 2001, including, but not limited to, brokerage agreements, commissions, correspondence, offering memoranda, confidentiality agreements, marketing materials, computations, tax strategies, and other sales strategies.

As a general practice, Patrick Communications does not keep paper or electronic files on potential or consummated client transactions for very long after the transaction is either consummated or is no longer a potential transaction. Information for a specific transaction loses its relevance shortly after a transaction is consummated and Patrick Communications does not keep the information nor is it required to do so by law. As noted above, I have reviewed all files currently in the possession of Patrick Communications and we have nothing related to this transaction. Most likely, given the date of this transaction, the files relating to it would have been discarded by 2002. In addition, Patrick Communications moved locations in 2007 and discarded many additional files at that time that were prior to that date and no longer relevant. Our current email system has no emails older than 2005 unless they were specifically archived. There are none relating to this transaction. Our current electronic calendar that tracks meetings, travel by the principals, conference calls, etc. starts in January of 2010 and an older version began in January of 2004. Our current accounting system goes back to 1998, but there are no entries related to "CTN Group" (which this Summons refers to collectively as Continental Television Network, Inc., CTN Missoula Inc., and CTN Butte, Inc.).

The order that we are responding to asks for what type of Information might have been on hand related to this request. It would likely have included an engagement agreement with

the seller, a marketing presentation outlining the market and station operations, and due diligence materials that were provided by the seller and were passed through to a buyer by Patrick Communications. These due diligence items provided to Patrick Communications by the seller might have included an asset inventory, financial information, financial statements and/or seller tax returns, copies of contracts and leases to be assumed, a list of real property to be conveyed, a personnel list, copies of employee handbooks and policies, copies of insurance coverage, and other items used and useful in a station operation. We would have had email communications with the seller and potential buyers, and potentially notes on the transaction. We may have had drafts of purchase agreements and schedules, but not necessarily. Patrick Communications as a matter of practice does not act as an agent of a seller or buyer, does not draft or review legal documents relating to a transaction, does not offer legal, FCC or tax advice, and always recommends that the parties to a transaction hire outside counsel for all matters relating to the transaction. Patrick Communications, as broker, primarily acts as an intermediary for passing along information that originates with the seller and assists in negotiating primary business points with the parties in a transaction.

4) All documents that discuss, describe, or otherwise relate to efforts to sell the CTN Group assets during 1998 through 2001, including, but not limited to brokerage agreements, commissions, correspondence, offering memoranda, confidentiality agreements, marketing materials, computations, tax strategies, and sales strategies.

I have reviewed all of our company files, both paper and electronic, and Patrick Communications has no documents that discuss, describe, effectuate or otherwise relate to efforts to sell the CTN Group assets during 1998 through 2001, including, but not limited to, brokerage agreements, commissions, correspondence, offering memoranda, confidentiality agreements, marketing materials, computations, tax strategies, and other sales strategies.

As a general practice, Patrick Communications does not keep paper or electronic files on potential or consummated client transactions for very long after the transaction is either consummated or is no longer a potential transaction. Information for a specific transaction loses its relevance shortly after a transaction is consummated and Patrick Communications does not keep the information nor is it required to do so by law. As noted above, I have reviewed all files currently in the possession of Patrick Communications and we have nothing related to this transaction. Most likely, given the date of this transaction, the files relating to it would have been discarded by 2002. In addition, Patrick Communications moved locations in 2007 and discarded many additional files at that time that were prior to that date and no longer relevant. Our current email system has no emails older than 2005 unless they were specifically archived. There are none relating to this transaction. Our current electronic calendar that tracks meetings, travel by the principals, conference calls, etc.

starts in January of 2010 and an older version began in January of 2004. Our current accounting system goes back to 1998, but there are no entries related to "CTN Group" (which this Summons refers to collectively as Continental Television Network, Inc., CTN Missoula Inc., and CTN Butte, Inc.).

The order that we are responding to asks for what type of Information might have been on hand related to this request. It would likely have included an engagement agreement with the seller, a marketing presentation outlining the market and station operations, and due diligence materials that were provided by the seller and were passed through to a buyer by Patrick Communications. These due diligence items provided to Patrick Communications by the seller might have included an asset inventory, financial information, financial statements and/or seller tax returns, copies of contracts and leases to be assumed, a list of real property to be conveyed, a personnel list, copies of employee handbooks and policies, copies of insurance coverage, and other items used and useful in a station operation. We would have had email communications with the seller and potential buyers, and potentially notes on the transaction. We may have had drafts of purchase agreements and schedules, but not necessarily. Patrick Communications as a matter of practice does not act as an agent of a seller or buyer, does not draft or review legal documents relating to a transaction, does not offer legal, FCC or tax advice, and always recommends that the parties to a transaction hire outside counsel for all matters relating to the transaction. Patrick Communications, as broker, primarily acts as an intermediary for passing along information that originates with the seller and assists in negotiating primary business points with the parties in a transaction.

5) All documents regarding Patrick Communications' approach to managing the tax concerns of 'C' corporations in a situation where a buyer is not interested in purchasing stock, including, but not limited to correspondence, agreements, computations, references, advice, presentation materials, and marketing materials effective or utilized by Patrick Communications at any time between 1994 and 2002.

I have reviewed all of our company files, both paper and electronic, and Patrick Communications has no documents regarding Patrick Communications' approach to managing the tax concerns of "C" corporations in a situation where a buyer is not interested in purchasing stock, including but not limited to correspondence, agreements, computations, references, advice, presentation materials, and marketing materials effective or utilized by Patrick Communications at any time between 1994 and 2002.

As a general practice, Patrick Communications does not keep paper or electronic files relating to transactions or marketing on a long term basis. Patrick Communications does not keep the information after it is no longer used, nor is it required to do so by law. As noted

above, I have reviewed all files currently in the possession of Patrick Communications and we have nothing related to this request. Given the range of dates cited, any files in this time range would have been discarded by 2003. In addition, Patrick Communications moved locations in 2007 and discarded many additional files at that time that were prior to that date and no longer relevant. Our current email system has no emails older than 2005 unless they were specifically archived. There are none relating to this transaction. Our current electronic calendar that tracks meetings, travel by the principals, conference calls, etc. starts in January of 2010 and an older version began in January of 2004.

The order that we are responding to asks for what type of Information might have been on hand related to this request. Patrick Communications has dealt with transactions involving both asset sales and stock sales. As to an "approach to managing the tax concerns of "C" corporations not interested in buying stock," Patrick Communications as a matter of practice does not act as an agent of a seller or buyer, does not draft or review legal documents relating to a transaction, does not offer legal, FCC or tax advice, and always recommends that the parties to a transaction hire outside counsel for all matters relating to the transaction. Patrick Communications, as broker, primarily acts as an intermediary for passing along information that originates with the seller and assists in negotiating primary business points with the parties in a transaction.

6) All documents that discuss, describe, or otherwise relate to participation by Patrick Communications or W. Lawrence Patrick in ventures addressing the tax concerns of 'C' corporations in a situation where a buyer is not interested in purchasing stock, at any time between 1994 and 2002.

I have reviewed all of our company files, both paper and electronic, and Patrick Communications has no documents that discuss, describe, or otherwise relate to participation by Patrick Communications or W. Lawrence Patrick in ventures addressing the tax concerns of "C" corporations in a situation where a buyer is not interested in purchasing stock at any time between 1994 and 2002.

As a general practice, Patrick Communications does not keep paper or electronic files relating to transactions or marketing on a long term basis. Patrick Communications does not keep the information after it is no longer used, nor is it required to do so by law. As noted above, I have reviewed all files currently in the possession of Patrick Communications and we have nothing related to this request. Given the range of dates cited, any files in this time range would have been discarded by 2003. In addition, Patrick Communications moved locations in 2007 and discarded many additional files at that time that were prior to that date and no longer relevant. Our current email system has no emails older than 2005 unless they

were specifically archived. There are none relating to this transaction. Our current electronic calendar that tracks meetings, travel by the principals, conference calls, etc. starts in January of 2010 and an older version began in January of 2004.

The order that we are responding to asks for what type of Information might have been on hand related to this request. I have no recollection of any participation by Patrick Communications or W. Lawrence Patrick in ventures addressing the tax concerns of "C" corporations in a situation where a buyer is not interested in purchasing stock at any time between 1994 and 2002.

Dated this 16th day of January, 2018.

_Susan K. Patrick_
Susan K. Patrick, Managing Member
Patrick Communications, LLC


STATE OF WYOMING    )
                    ) SS.
COUNTY OF PARK      )

The foregoing instrument was acknowledged before me by Susan K. Patrick, this 16th day of January, 2018.

WITNESS my hand and official seal.

[Notary Seal: K.L. HOLLIDAY, NOTARY PUBLIC, COUNTY OF PARK, STATE OF WYOMING, MY COMMISSION EXPIRES JUNE 2, 2019]

_K.L. Holliday_
Notary Public

My commission expires:
_____